UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>APPROXIMATELY $73,562 IN UNITED STATES CURRENCY,<br><br>Defendant. | Case No: C 08-2458 SBA<br><br>**ORDER GRANTING CLAIMANT RAASHIDA MOORE-BRISCO'S MOTION TO SET ASIDE DEFAULT**<br><br>[Docket 41] |

This is an *in rem* action brought by the United States of America ("the Government") against currency in the amount of $73,562, which was seized from the residence of Eugene Brisco ("Brisco") and his wife, Raashida Moore-Brisco ("Moore"), as money furnished or intended to be furnished in exchange for a controlled substance. On July 10, 2009, the Clerk entered default against Moore, who claims the funds are hers. The parties are presently before the Court on Moore's motion to set aside default. (Docket 41.) Having read and considered the papers filed in connection with this matter and being fully informed, the Court GRANTS Moore's motion for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b).

I. **BACKGROUND**

On May 13, 2008, the Government filed a Complaint for Forfeiture ("Complaint") against currency in the amount of $73,562, which was seized as money furnished or intended to be furnished by a person in exchange for a controlled substance, 21 U.S.C. § 881(a)(6). (Docket 1.) The currency and controlled substances were recovered from the residence of Brisco and Moore by the Alameda County Narcotics Task Force on June 13, 2007. (Ibarra Decl. ¶ 2 (Docket 26).) On or about June 2, 2008, the Government served Moore with the

Complaint and Notice of Forfeiture of Action ("Notice") and various other court-related documents. The Notice states that "[i]n order to contest forfeiture of the *in rem* currency, any person who asserts an interest or right in or right against the property, must file a verified statement identifying the interest or right within 35 days after service of the complaint in accordance with Rule G(5) of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims . . . ." (Docket 3 at 1.) In addition, the Notice specifies that a claimant must file an answer or Rule 12 motion in response to the Complaint within 20 days of submitting a claim. (Id. at 1-2.) On June 27, 2008, Brisco and Moore, acting pro se, timely filed a joint (but unverified) claim (Docket 9), though neither filed an answer or Rule 12 motion thereafter.[1]

On April 27, 2009, the Government filed a motion to strike Moore's claim based on her failure to submit a verified claim and to file an answer in response to the Complaint. Moore did not oppose the motion, which the Court granted on July 6, 2009. (Docket 31.) On July 10, 2009, upon request of the Government, the Clerk entered default against Moore. (Docket 33.) On July 16, 2009, the Government filed a motion for default judgment. (Docket 36.)

On August 12, 2009, Moore filed a document styled as "Claimaint Raashida J. Moore-Brisco's Opposition (sic) to Plaintiff's Request for the Clerk to Enter Default, and in the Alternative Request to Set Aside Any Default Entered Aside Due to Extrinsic and/or Intrinsic Fraud, Surprise, Excusable Neglect, Detrimental Reliance and Mistake Fed. R. Civ. P. 55(c) & 60(b) motion to vacate the civil forfeiture default & judgment." (Docket 41.) The Court liberally construed this document as a motion to set aside the entry of default and for reconsideration of the Court's order granting the Government's motion to strike, and set a briefing schedule on Moore's motion. (Docket 46.) The Government and Moore have since filed their opposition and reply papers, respectively, and the matter is now ripe for resolution.

---

[1] The Court notes that on September 28, 2007, after the funds were seized but prior to the commencement of this action, Brisco and Moore allegedly filed a *verified* claim in "Case No. CC-08-0047." (Reply Ex. 3 and 4 (Docket 49.) It is unclear, however, whether Moore served this "claim" on the Government or what prompted Moore and Brisco to submit these purported claims in the first instance.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause." Franchise Holding II, LLC v. Huntington Rests. Group, Inc., 375 F.3d 922, 925 (9th Cir. 2004). "The good cause analysis considers three factors: (1) whether [defendant] engaged in culpable conduct that led to the default; (2) whether [defendant] had a meritorious defense; or (3) whether reopening the default . . . would prejudice [plaintiff]." Id. at 925 -926. "As these factors are disjunctive, the district court [is] free to deny the motion "if any of the three factors [is] true.'" Id. (quoting in part Am. Ass'n of Naturopathic Physicians v. Hayhurst, 227 F.3d 1104, 1108 (9th Cir. 2000)). Defendant bears the burden of showing good cause to set aside the default under this test. Id. However, any doubt regarding whether to grant relief should be cast "in favor of setting aside the entry of default and deciding the case on its merits." See O'Connor v. Nevada, 27 F.3d 357, 363 (9th Cir. 1994). In addition, pro se pleadings must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

## III. DISCUSSION

### A. MOORE'S CULPABILITY

"[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of an action and *intentionally* failed to answer." TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 697 (9th Cir. 2001) (emphasis added). The mere negligent failure to answer does not establish a defendant's culpability. Id. Rather, in the context of a motion to set aside a default, "intentional" means more than simply a conscious choice; it requires a showing that a defendant's conduct evinces a "devious, deliberate, willful, or bad faith failure to respond." Id. at 698.

Based on the record presented, the Court is persuaded that Moore's failure to submit a *verified* claim and response to the complaint was due to her negligence, and was not the result of any willful, deliberate, or bad faith behavior. There is no dispute between the parties that Moore timely submitted a claim to the Government in response to the Notice. Though the claim was defective because it was not verified, it is clear, particularly when liberally

construed, that Moore's intent was to assert her interest in the seized funds. This fact is underscored by Moore's subsequent submission of a declaration, signed under penalty of perjury, affirming that the funds are, in fact, hers. (Moore Decl. ¶ 1 (Docket 50).)[2] With regard to Moore's answer, it is uncontroverted that her failure to respond to the Complaint was the result of her unfamiliarity with the rules of procedure, as opposed to any nefarious or bad faith purpose. See TCI Group Life Ins. Plan, 244 F.3d at 698.

For its part, the Government erroneously predicates its opposition entirely on the notion that Moore received adequate notice of the action. The question is not whether Moore was *aware* of her obligation to file a claim and answer, but rather, whether her failure to comply with such requirements was *intentional*, notwithstanding her awareness. Id. Notably, the Government neither alleges nor presents any evidence to show that Moore's failure to comply was intentional. At best, the Government's response shows that Moore has conducted herself in a dilatory or neglectful manner which, under the law of this Circuit, is insufficient to show culpability. Moreover, while Moore may not have filed an answer, her *numerous* filings make clear Moore's intent to challenge the forfeiture of funds. See 10A Wright, Miller & Kane, Federal Practice and Procedure, Civil 2d § 2682 (1998) (default should not be entered if the defendant has filed a response indicating its intent to defend the action).[3]

### B. MERITORIOUS DEFENSE

A party seeking to vacate entry of default must allege "specific facts that would constitute a defense." TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 700 (9th Cir. 2001). This burden is "not extraordinarily heavy." Id. A defendant need only show facts or

---

[2] The Civil Asset Forfeiture Reform Act of 2000 specifies that "[a] claim need not be made in any particular form." 18 U.S.C. § 983(a)(2)(C). In addition, each federal agency conducting a nonjudicial forfeiture under the Act "shall make claim forms generally available on request, which forms shall be written in easily understandable language." Id.

[3] Moore's alternative suggestion that her default should be excused on the ground that a "conflict of interest" exists because the Court and the U.S. Attorneys' Office "all work for the same employer" is meritless. The mere fact that the district court and the U.S. Attorney's Office are connected to the United States government obviously does not, standing alone, create a disqualifying conflict of interest. If that were the case, the district court would never be able to preside over any case involving a government agency or government lawyers, which obviously is not the case.

law in support of a viable defense; it is not necessary that the defendant prove that it will prevail on that defense. Id. Here, the Government seized the currency pursuant to 21 U.S.C. § 881(a)(6), as money furnished or intended to be furnished by a person in exchange for a controlled substance or money traceable to such a transaction. If a claimant establishes ownership of the seized property, the burden shifts to the Government to demonstrate that the property to be forfeited is substantially connected to drug dealing. See 18 U.S.C. § 983(c)(1). "If the government meets its burden, the burden then shifts to [the claimant] to prove, by a preponderance of the evidence, that the money was not connected with illegal drug activity." United States v. Currency, U.S. $42,500.00, 283 F.3d 977, 980 (9th Cir. 2002); 18 U.S.C. § 983(d)(1) ("innocent owner" defense).

In this case, Moore declares, under oath, that the $73,562 seized is "her legal property" generated through "legitimate business earnings from a Barber Shop and Beauty Shop business that [she and her husband] have owned and operated for several years . . . ." (Moore Decl. ¶¶ 1-2 (Docket 68).) She also claims that some of the seized funds were from "saving[s] and wedding gifts[.]" (Id. ¶ 7.) With regard to the disclaimer, Moore asserts that she signed the form under duress. Specifically, Moore states that she felt compelled to sign the form to secure her release, which was of particular concern to her since Brisco had been detained and she wanted to be reunited with her minor child. (Id. ¶ 10.) Moore also asserts that she was misled by the police as to what she was signing. (Id.) These assertions, if proven, may constitute a meritorious defense to the Government's seizure complaint. See Currency, U.S. $42,500.00, 283 F.3d at 980.

### C. PREJUDICE TO PLAINTIFF

The final issue presented is whether setting aside the default would be prejudicial to the Government. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying the resolution of a case." TCI Group Life Ins. Plan, 244 F.3d at 701. Rather, the salient question is whether granting such relief would hinder the plaintiff's ability to pursue its claim. Id. (citing Falk v. Allen, 739 F.2d 461, 463 (9th Cir. 1984)). To be considered prejudicial, "the delay must result in tangible harm such as a loss of evidence,

increased difficulties of discovery, or greater opportunity for fraud or collusion." Id. Notably, the Government does not claim that it will suffer any tangible harm if the default is set aside.

### D. FURTHER PROCEEDINGS

As noted, there are essentially three steps in a forfeiture proceeding. First, the claimant must establish ownership in the seized property. Second, if claimant establishes ownership, the burden shifts to the Government to show that the property to be forfeited is substantially connected to drug dealing. And finally, if the Government meets its burden, the claimant must show by a preponderance of the evidence that the money was not connected with illegal drug activity. Because resolution of Moore's claim likely will require the consideration of testimony to assess the validity and sufficiency of her claim to the seized funds, the Court, pursuant to 28 U.S.C. § 636(b)(1)(B),[4] will refer this matter to a magistrate judge of this Court to conduct the necessary proceedings, including an evidentiary hearing, if necessary, and to prepare a Report and Recommendation regarding validity of Moore's claim, including whether she meets the requirements of the innocent owner defense under 18 U.S.C. § 983(d)(1).

## IV. CONCLUSION

The relevant factors militate in favor of finding "good cause" to set aside the default. Thus, for the reasons stated above,

IT IS HEREBY ORDERED THAT:

1. Moore's motion to set aside the default is GRANTED.

2. The Government shall *forthwith* send all claimants in this action, including Moore, the claim form required by 18 U.S.C. § 983(a)(C)(2). Within **30 days** of the date this Order is filed, Moore shall file (1) a *verified* claim that complies in all respects with Rule G(5)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims and (2) an answer to the Complaint for Forfeiture. The failure to comply with *both* of these requirements within the specified deadline may result in sanctions, up to and including the re-entry of default

---

[4] Under 28 U.S.C. § 636(b)(1)(B), "a judge may . . . designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court . . . ."

1  against Moore.

2      3.    This matter is referred to the Chief Magistrate Judge or her nominee for the
3  preparation of a Report and Recommendation as set forth above.

4      4.    The parties shall appear by telephone for a Case Management Conference on
5  **April 21, 2010 at 3:00 p.m.**  The parties shall **meet and confer** prior to the conference and
6  shall prepare a joint Case Management Conference Statement which shall be filed no later than
7  ten (10) days prior to the Case Management Conference that complies with the Standing Order
8  for All Judges of the Northern District of California and the Standing Order of this Court.
9  Plaintiff shall be responsible for filing the statement as well as for arranging the conference
10 call. All parties shall be on the line and shall call (510) 637-3559 at the above indicated date
11 and time.

12     5.    This Order terminates Docket No. 41.

13 IT IS SO ORDERED.

14 Dated: February 4, 2010

                                       */s/ Saundra B. Armstrong*
15                                        SAUNDRA BROWN ARMSTRONG
                                       United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

USA,

        Plaintiff,

  v.

$73,562 U.S. CURRENCY et al,

        Defendant.
                                    /

Case Number: CV08-02458 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on February 5, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Eugene Brisco
1434 South Tuxedo Ave.
Stockton, CA 95204

Raashida J. Moore-Brisco
1434 South Tuxedo Ave.
Stockton, CA 95204

Dated: February 5, 2010

                                        Richard W. Wieking, Clerk

                                             By: LISA R CLARK, Deputy Clerk